[Cite as *State v. Byrd*, 2011-Ohio-2060.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                        :
                                     :      Appellate Case No. 23950
        Plaintiff-Appellee           :
                                     :      Trial Court Case No. 08-CR-3074
v.                                   :
                                     :
DEREK W. BYRD                        :      (Criminal Appeal from
                                     :       Common Pleas Court)
        Defendant-Appellant          :
                                     :

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of April, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ROBERT E. SEARFOSS, III, Atty. Reg. #0078906, 321 North Main Street, Bowling Green, Ohio 43402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Defendant, Derek Byrd, appeals from his conviction for involuntary manslaughter.

{¶ 2} On July 17, 2008, in Dayton, Byrd punched a man so hard that the man fell down, hitting his head on the concrete on which he was standing. Two days later, the man died

from his injuries.

**{¶ 3}** On January 8, 2010, Byrd entered a negotiated plea of guilty to involuntary manslaughter, R.C. 2903.04(B) and 2903.13(A), a third-degree felony. Byrd agreed to serve from 1 to 5 years in prison and agreed not to apply for judicial release until he had served at least one year in prison. In exchange, the state agreed not to recommend a prison term, leaving the length of Byrd's prison sentence entirely within the trial court's discretion, and agreed not to object to his application for judicial release.

**{¶ 4}** On February 23, 2010, the trial court sentenced Byrd to a 5-year prison term. Under the version of the judicial-release statute that was in effect at the time of sentencing, coupled with Byrd's sentencing agreement that he would not file for judicial release before one year, had the court imposed a prison term of 1, 2 , 3, or 4 years, Byrd could have applied for judicial release after one year. But the specific wording of the statute for a 5-year term would mean that Byrd would not be eligible for judicial release at all because he would not be eligible to file until he served all five years.[1] On February 24, 2010, the day after he was sentenced, Byrd filed a motion to withdraw his guilty plea. Byrd argued that he did not enter his guilty plea knowingly, intelligently, and voluntarily because the trial court had mislead him into believing that he would be eligible to apply for judicial release after one year, regardless of the prison term it imposed. On February 25, 2010, the court entered a judgment of conviction without ruling on Byrd's motion to withdraw. On March 11, 2010, Byrd supplemented his motion to withdraw.

**{¶ 5}** On March 23, 2010, Byrd appealed.

---

[1] See the discussion at pg 5 herein as to the questionable constitutionality of this provision.

**Sole Assignment of Error**

**{¶ 6}** "The trial court erred by accepting Appellant's guilty plea, which was not knowingly or intelligently made, and also by denying Appellant's motion to withdraw it."

**{¶ 7}** Byrd contends that the trial court misrepresented the law that governs his eligibility for judicial release. Byrd claims that the court did not make it clear at the plea hearing that if it imposed a 5-year prison term he would not be eligible until he had served four years. Rather, says Byrd, the court led him to believe that, regardless of the sentence length, he could apply for release after serving, per the plea agreement, one year in prison.

**{¶ 8}** At the plea hearing, the prosecuting attorney described the plea agreement this way:

**{¶ 9}** "[PROSECUTOR]: * * * [T]he defendant will * * * plead guilty to the charge of involuntary manslaughter. It's the indicted charge, it's a felony of the third degree.

**{¶ 10}** "And as part of the terms of the agreement, he is agreeing that he will be sentenced to a prison term of one, two, three, four or five years as determined by this Court. As part of the agreement, the State has agreed that they will not make a recommendation as to what that number of years is. It–so, there would be no agreement on that and it would be the Court's determination, after having a chance to review the PSI [pre-sentence investigation report], the case facts and statements from the–the defendant, his supporters and the family of the–the survivors, and their supporters.

**{¶ 11}** "And then as far as the terms of judicial release, under the–the defendant is eligible for judicial release in this matter. It's not guaranteed; however, he is eligible. And the

State is on record as saying that the State will not object to a filing by the defendant for judicial release after he has served at least one year of whatever his stated prison term is as determined by this Court.

**{¶ 12}** "THE COURT: Is that your understanding, [defense counsel]?

**{¶ 13}** "[DEFENSE COUNSEL]: Yes, Your Honor, it is."

**{¶ 14}** (Plea Tr. 3-4). The trial court then clarified two aspects of the plea agreement:

**{¶ 15}** "THE COURT: Okay. And let's just make sure–I want to make sure there's one part that's just clear as my understanding of the sentence. There is no mandatory sentence for this particular charge, but Mr. Byrd has agreed to serve some time; is that correct?

**{¶ 16}** "[DEFENSE COUNSEL]: That is correct, Your Honor.

**{¶ 17}** "THE COURT: And then I understand the judicial release that he can apply for it after one year has been served. And then technically, while the State–while the Court can impose a five-year sentence, that would–if the Court imposes that, we understand that that would take away from the agreement.

**{¶ 18}** "[DEFENSE COUNSEL]: That's correct, Your Honor.

**{¶ 19}** "THE COURT: All right. Very well.

**{¶ 20}** "[DEFENSE COUNSEL]: Your Honor–

**{¶ 21}** "THE COURT: Go ahead.

**{¶ 22}** "[DEFENSE COUNSEL]: –just so we're clear on the judicial release issue, he's actually eligible by law after six months–

**{¶ 23}** "THE COURT: Okay.

**{¶ 24}** "[DEFENSE COUNSEL]: –but by agreement of the parties, we won't apply for

that until after a year of incarceration.

{¶ 25} "THE COURT: Okay. Very well.

{¶ 26} "You understanding what we're saying, sir?

{¶ 27} "[BYRD]: Yes, ma'am." (Plea Tr. 4-5).

{¶ 28} Section 2929.20 of the Revised Code governs judicial release. There could be arguable uncertainty as to which version of the statute applies and what the effect of that application would mean to Byrd. Amendments to this statute went into effect on April 7, 2009, five days after Byrd was indicted and almost nine months after the date of the offense listed in the indictment. There is some disagreement between the parties concerning which version of R.C. 2929.20 applies. Under the former version, a sentence of 1, 2, 3, or 4 years would mean that a defendant would be eligible for judicial release 180 days after delivery to the institution, and a sentence of 5 years would make the defendant eligible after serving four years. In contrast, under the amendments effective April 7, 2009, except for Byrd's agreement not to apply for one year, a sentence of less than 2 years means eligibility 30 days after delivery to the institution; a sentence of 2 or more years but less than 5 years means eligibility 180 days after delivery to the institution; and a sentence of 5 or more years but not more than 10 years means that the defendant is not eligible for judicial release until he has served 5 years. R.C. 2929.20(C). In *State v. Peoples*, 102 Ohio St.3d 460, 2004-Ohio-3923 the Ohio Supreme Court held that the applicable judicial release statute is the version of the statute in effect at the time the defendant is sentenced. We note, however, that the provision in the current statute for a 5 year eligilibility for a five year sentence, R.C. 2929.20(C)(3), is likely unconstitutional. The Ohio Supreme Court also held in *State v. Peoples*, supra, that a previous version of R.C. 2929.20 violated the Equal Protection

Clause of the Ohio Constitution by making offenders sentenced to 5 years in prison not eligible until serving five years. The statute had been corrected to eliminate the five-year anomaly but, inexplicably, the next revision of the statute went back to the terminology that had been found unconstitutional. There is now pending in the Ohio Legislature House Bill 86 which, if passed, will again set the time for filing for judicial release for a defendant sentenced to five years at four years.  As it now stands, with a five year sentence, Byrd is not eligible for judicial release at all unless he files an application for judicial release and the court determines that the five year limitation is unconstitutional.  If the limitation is found unconstitutional, except for his agreement not to file for one year, Byrd would be eligible after 180 days.

{¶ 29} The day after he was sentenced, Byrd raised the issue of his misunderstanding in the motion to withdraw his guilty plea. While it is true that filing a notice of appeal divests a trial court of jurisdiction to address a motion to withdraw a guilty plea, *State v. Wilson*, Montgomery App. No. 23167, 2010-Ohio-109, at ¶16 (Citation omitted.), it is also true that if the record shows that the trial court failed to rule on a motion, an appellate court will presume that the court intended to overrule it. See *State v. Pointer*, Fayette App. No. CA2010-03-003, 2010-Ohio-5067, at ¶10 (Citation omitted.). Here, the trial court filed a termination entry, "the judgment of conviction journalized by the court following imposition of sentence," *State v. Venable*, Montgomery App. No. 24020, 2010-Ohio-6211, at ¶24; see Crim.R. 32(C), despite the fact that Byrd had moved to withdraw his plea. Since the court did so without addressing the motion to withdraw, it would appear that the court intended to overrule it. This assumption finds support in the fact that the court never addressed the motion in the month that separated  the date on which Byrd filed it and the date on which he filed his notice of appeal, despite Byrd's supplemental

memorandum and the two memoranda in opposition filed by the state.

{¶ 30} Criminal Rule 32.1 provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Under the postsentence standard, "[a] manifest injustice occurs when the defendant demonstrates that he would not have otherwise entered the plea had he known of the information of which the court failed to inform him." *State v. Davis*, Clark App. No. 2003-CA-87, 2004-Ohio-5979, at ¶29, citing *State v. Nero* (1990), 56 Ohio St.3d 106, 108. Byrd claims that he did not understand at the time he entered his plea that if the trial court imposed a 5-year prison sentence he would not be eligible to apply for release after one year as discussed at his plea. The possibility of judicial release after serving one year likely induced Byrd to plead guilty; arguably, to Byrd, it was the most valuable part of the plea agreement. In situations like this one, we have applied the rule that "a hearing on a postsentence motion to withdraw a guilty or no contest plea is required if the facts alleged by the defendant and accepted as true would require the court to permit that plea to be withdrawn." *State v. Turner*, 171 Ohio App.3d 82, 2007-Ohio-1346, at ¶27 (Citation omitted.). Accordingly, we determine that the trial court erred by failing to hold a hearing on the motion to withdraw.

{¶ 31} The sole assignment of error is sustained.

{¶ 32} The judgment of conviction is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

GRADY, P.J., and FAIN, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
R. Lynn Nothstine
Robert E. Searfoss, III
Hon. Frances E. McGee