[Cite as *State v. Rupp*, 2013-Ohio-1847.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


|                          |     |                          |
|--------------------------|-----|--------------------------|
| STATE OF OHIO,           | :   |                          |
| Plaintiff-Appellant,     | :   | CASE NO.  CA2012-11-014  |
|                          | :   | O P I N I O N            |
| - vs -                   |     | 5/6/2013                 |
|                          | :   |                          |
| DAVID RUPP,              | :   |                          |
| Defendant-Appellee.      | :   |                          |


CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 12-CR-10334


Martin P. Votel, Preble County Prosecuting Attorney, Eric E. Marit, Courthouse, 1st Floor, 101 East Main Street, Eaton, Ohio 45320, for plaintiff-appellant

James W. Thomas, Jr., 112 North Barron Street, Eaton, Ohio 45320, for defendant-appellee


**PIPER, J.**

{¶ 1}   Plaintiff-appellant, the state of Ohio, appeals a decision of the Preble County Court of Common Pleas, granting judicial release to defendant-appellee, David Rupp.[1]

{¶ 2}   Rupp was indicted for felonious assault after he bit the thumb off of his 16-year-old niece during an altercation at a 2009 family function.  The matter proceeded to trial, and a

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

jury found Rupp guilty of felonious assault. In 2010, the trial court sentenced Rupp to five years in prison.

{¶ 3} On May 31, 2011, Rupp moved for judicial release. The state opposed Rupp's motion, and argued that Rupp was not eligible for judicial release because he had not served enough of his five-year sentence. The trial court disagreed, and instead, found that the judicial release statute in place was unconstitutional because it required those sentenced to five years to serve five years before they were eligible for judicial release. The trial court noted in its entry that Rupp's petition for judicial release was timely-filed because the unconstitutional five-year provision was no longer to be considered, and although Rupp was eligible for release, it was not appropriate at that time.

{¶ 4} Rupp then filed another motion for judicial release on August 6, 2012. This motion for judicial release was accompanied by various awards and certificates Rupp received in prison, as well as letters of support from his family. The state once again argued that Rupp was not eligible for judicial release, this time, because the legislature had passed House Bill 86 (H.B. 86), which amended the judicial release requirements for those sentenced to serve five years. The new terms of the judicial release statute require a person sentenced to five years to serve four years of their sentence before becoming eligible for judicial release. R.C. 2929.20(C)(3). The trial court disagreed with the state's argument, instead finding that it had already found Rupp eligible for release, and that "basic fairness" required that the prior version of the statute govern Rupp's release. The trial court held a hearing, and determined that judicial release was warranted, and granted Rupp's petition. The state now appeals that decision, raising the following assignment of error.

{¶ 5} THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR JUDICIAL RELEASE WHEN HE WAS NOT ELIGIBLE FOR THE SAME.

- 2 -

**{¶ 6}** The state argues the trial court erred by granting Rupp's motion for judicial release because the current version of R.C. 2929.20 applies, and requires a person sentenced to five years to serve four years of the five-year sentence before becoming eligible for judicial release. As this case requires us to interpret a statutory provision, we employ a de novo standard of review. *State v. Consilio,* 114 Ohio St.3d 295, 2007-Ohio-4163 ¶ 8.

## State v. Peoples

**{¶ 7}** As an initial matter, the trial court found that Rupp's filing of his first motion for judicial release was timely made. In so doing, the trial court recognized that the judicial release statute in place at that time was unconstitutional because it required a person who was sentenced to five years to serve all five years of the sentence before he became eligible for judicial release. This rendered an early judicial release impossible if the sentence was five years. The Ohio Supreme Court has previously held that such a result creates an equal protection violation, and that a statute requiring a defendant to serve five years of a five-year sentence before becoming eligible for judicial release is unconstitutional. *State v. Peoples,* 102 Ohio St.3d 460, 2004-Ohio-3923.

**{¶ 8}** In *Peoples,* the Ohio Supreme Court held that the version of R.C. 2929.20(B)(3) in effect until March 23, 2000 was unconstitutional because "offenders sentenced to exactly five years are treated differently from other members of the class because they are unable to apply for judicial release." *Id.* at ¶ 6. Essentially, the language of the statute permitted defendants sentenced to more than five years to apply for judicial release, while, for all intents and purposes, the statute prohibited those sentenced to exactly five years from ever being eligible for judicial release. Once the Ohio Supreme Court struck R.C. 2929.20(B)(3) as unconstitutional, the court found that Peoples' motion for judicial release was timely because he made the motion 180 days after serving his mandatory sentence.

{¶ 9} Notwithstanding the Ohio Supreme Court's finding of unconstitutionality, and for some perplexing reason, the General Assembly amended the statute after *Peoples* was decided to once again include the offending language. The version of R.C. 2929.20 that took effect in April 2009, and controlled Rupp's judicial release eligibility, reverted to the required time frame that had been held unconstitutional by the Ohio Supreme Court.[2]

{¶ 10} The trial court relied upon *Peoples* to determine that Rupp was eligible for judicial release at the time he filed his motion. The trial court's decision finding the applicable statute unconstitutional was not challenged by the state, and Rupp's eligibility became a clear and unequivocal pronouncement. Although the trial court declined to grant Rupp judicial release, it later granted Rupp's motion after a hearing on the matter. We would therefore note that the trial court could consider whether to grant Rupp's subsequent motion for judicial release because it did not dismiss Rupp's first motion with prejudice, nor did it deny Rupp's first motion after holding a hearing. According to R.C. 2929.20(D),

> The court shall not grant the motion without a hearing. If a court denies a motion without a hearing, the court later may consider judicial release for that eligible offender on a subsequent motion filed by that eligible offender unless the court denies the motion with prejudice. If a court denies a motion with prejudice, the court may later consider judicial release on its own motion. If a court denies a motion after a hearing, the court shall not consider a subsequent motion for that eligible offender. The court shall hold only one hearing for any eligible offender.

Therefore, the trial court was statutorily permitted to consider whether to grant Rupp's second

---

2. Other courts have recognized this aberration as well. The Sixth District recognized that the version of R.C. 2929.20(C)(3) in effect after April 7, 2009, had the same language and effect as that which was held unconstitutional by the Ohio Supreme Court in *Peoples*. *State v. Oliver,* 6th Dist. No. S–10–040, 2011-Ohio-5305. Similarly, the Second District Court of Appeals noted that the 2009 version of R.C. 2929.20(C)(3) reverted to language that had been held unconstitutional. *State v. Byrd,* 2nd Dist. No. 23950, 2011-Ohio-2060. In *Byrd,* the court stated, "the statute had been corrected to eliminate the five-year anomaly but inexplicably, the next revision of the statute went back to the terminology that had been found unconstitutional." *Id.* at ¶ 28. While the issue in *Byrd* did not require the court to determine what time frame was applicable once the unconstitutional provision was struck, the court nonetheless noted that once the five-year limitation is found unconstitutional, the defendant becomes eligible to move for judicial release after 180 days. *Id.*

motion.

## H.B. 86

{¶ 11} The state argues, and we agree, that the changes to the judicial release section apply to judicial release decisions made on or after the effective date of H.B. 86, which was September 30, 2011. R.C. 2929.20(M). We further agree with the state that this court has previously determined that the changes to the judicial release statute as a result of H.B. 86 apply to inmates who had committed crimes and were sentenced prior to the changes, so long as a decision had not been reached regarding judicial release prior to the effective date. *State v. Strunk*, 12th Dist. No. CA2012-03-023, 2012-Ohio-5013. However, contrary to the state's arguments, the record is clear in this case that the trial court had reached a decision regarding Rupp's eligibility for judicial release, and therefore, the new changes as a result of H.B. 86 are not applicable.

{¶ 12} In *Strunk*, the trial court's "decision" regarding Strunk's eligibility for judicial release was made after the effective date of H.B. 86. However, the trial court herein rendered a "decision" that Rupp was eligible for judicial release before the effective date of H.B. 86. In determining that Rupp was eligible, the trial court decided not to initiate Rupp's release at that time because he had only served one fourth of his sentence. Despite its determination that Rupp could not yet be released, the trial court expressly informed Rupp that he was eligible for release, thereby signaling that release would be reconsidered subsequent in time. In making a judicial determination that the motion for judicial release was timely filed and that Rupp was eligible, the trial court preserved the opportunity to grant release at a later time, thereby making a judicial release decision prior to the enactment date of the H.B. 86 changes.

{¶ 13} As such, with the unfolding of these extremely narrow facts, Rupp's eligibility was "vested" by the trial's courts determination within its first entry. Viewed another way,

- 5 -

once the trial court made its eligibility decision, Rupp was eligible, and could not lose his eligibility based upon a subsequently-enacted statute that was designed in part to amend a constitutionally-infirm statute. The fact that the trial court postponed its determination as to when release would be appropriate, however, did not divest Rupp's eligibility for judicial release, as that decision had already been made.

{¶ 14} Rupp's eligibility "decision" was made June 9, 2011. R.C. 2929.20, as currently enacted, does not apply when a "decision" on eligibility has been made prior to September 30, 2011. The state argues that the current version of R.C. 2929.20 is applicable because Rupp re-filed his motion for judicial release in order to obtain that later time as to actual release. Yet, H.B. 86 does not encompass a situation where the trial court previously made a "decision" regarding judicial release eligibility.

{¶ 15} This court notes the parties' differing interpretations as to the application of H.B. 86, thus we must be mindful of the rule of lenity as applied to criminal statutes. Justice Lanzinger discussed the rule of lenity saying:

> With respect to criminal statutes * * * [e]ven if there were an ambiguity, meaning two reasonable ways of reading the statute, R.C. 2901.04 provides that we must read the language of the relevant statute not in favor of the government, but in favor of the accused. This rule of lenity, as codified, states that "[e]xcept as otherwise provided in division (C) or (D) of this section, sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." R.C. 2901.04(A). In other words, penal statutes may not be extended by implication to cases not falling within their terms.

*State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, ¶ 81 (Lanzinger, J., dissenting).

{¶ 16} The trial court gave consideration to the reasonable interpretations offered by both Rupp's counsel and the state. However, the trial court honored the spirit of R.C. 2901.04(A), the rule of lenity, when it stated that "fundamental fairness" did not permit the court to withdraw its previous determination of Rupp's eligibility and "that basic fairness

requires that the version that applies is the one in existence at the time of the sentencing."[3] Without question, Rupp's sentencing date, and more importantly the trial court's determination of eligibility, was prior to the effective date of H.B. 86.

{¶ 17} The state argues that our previous decision in *Strunk* requires the trial court herein to retroactively rescind its prior determination that Rupp was eligible for judicial release. Again, we are mindful that "retrospective application of laws have received the near universal distrust of civilizations." *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, ¶ 9. If injustice can result from retroactive legislation, the same can be said of legislation which would rescind prior judicial determinations, including Rupp's determination of timely eligibility. This is particularly true when such is contrary to the court's desire to exercise "fundamental fairness." To not run afoul of impermissible retroactivity, the trial court must have the authority to act on its previous determinations in the exercise of that which it holds to be just and fair.

{¶ 18} A court is limited in its ability to reconsider its previous decisions. *State ex rel Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, superseded on other grounds. Here, the state, would delegate to the legislature the ability to nullify the court's decision regarding Rupp's eligibility, which the trial court itself cannot do. This too closely blurs the line protecting the separation of powers. In *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, ¶ 55, Chief Justice O'Connor quoted The Federalist No. 81 (J. Cooke Ed. 1961) 545, saying, "[a] legislature without exceeding its province cannot reverse a determination once made, in a particular case * * *."

---

3. While the de novo standard of review causes this court to independently review the record without giving deference to the trial court's decision, we nonetheless recognize and agree with the trial court's determination regarding its own role in honoring fundamental fairness, especially where the rule of lenity, R.C. 2901.04(A), is an example of the legislature codifying the concept of fundamental fairness.

{¶ 19} Had Rupp not relied to his prejudice upon the trial court's determination that he was in fact eligible for release in due time, common sense dictates he would have been motivated to pursue his actual release before H.B. 86 took effect. In *State v. Oliver*, 6th Dist. No. S-10-040, 2011-Ohio-5305, the Sixth District Court of Appeals determined that the trial court's misstatement of law regarding judicial release resulted in prejudice to the defendant. The court found that "although no guarantee was made that such release would be granted * * * the possibility of judicial release likely was an important factor which induced appellant * * *." Id. at ¶ 20. *See also State v. Loyd*, 6th Dist. Nos. E-10-055, E-10-056, 2011-Ohio-2964 (finding that the trial court led the defendant to believe he would be eligible for judicial release, which belief induced the defendant's conduct).

{¶ 20} Here, however, the trial court's decision that Rupp was eligible was not a misstatement of law and was correctly relied upon. The prejudice to Rupp would be permitting the legislature to nullify the trial court's decision. Once judicially determined, Rupp's eligibility became a vested right not to be subsequently pulled out from underneath him by a later piece of legislation.

{¶ 21} The legislature in H.B. 86 did not address a situation like the one before us, where the trial court had already issued a decision finding the defendant was eligible for judicial release, prior to the effective date of the legislation. Thus, H.B. 86 is not applicable to these unique and narrow facts and the trial court was correct in recognizing such. The state's single assignment of error is overruled.

{¶ 22} Judgment affirmed.

RINGLAND, P.J., concurs.

M. POWELL, J., dissents.

**M. POWELL, J., dissenting.**

{¶ 23} As noted by the majority, the trial court found in its June 9, 2011 Decision and Entry that Rupp's motion for judicial release was "timely filed." That is, based upon the Ohio Supreme Court's decision in *Peoples*, 2004-Ohio-3923, the trial court determined that the judicial release statute in effect at the time, relating to those sentenced to a five-year prison term, unconstitutionally required that they serve five years before they could apply for judicial release. The trial court, therefore, held that the prior statute applied and that Rupp was eligible to apply for judicial release after having served 18 months of his 5-year sentence. However, the trial court found that "judicial release [was] not appropriate" and that "it [was] simply too early for [Rupp] to be released." The trial court ruled that "[t]he motion is denied." Importantly, the trial court did not defer its ruling on the motion or otherwise reserve jurisdiction to determine the matter at a later time. The motion was entirely disposed of with the trial court's June 9, 2011 entry.

{¶ 24} Rupp's August 6, 2012 motion for judicial release was not a continuation of the motion he filed on May 31, 2011 (or a re-filing of his first motion as characterized by the majority), but rather was a *new* motion for judicial release. As of the filing of this subsequent motion, H.B. 86 had been enacted and became effective on September 30, 2011. This legislation provides that those sentenced to a five-year prison term are not eligible to apply for judicial release until four years after their delivery to prison. Pursuant to R.C. 2929.20(M), this requirement applies to any judicial release "decision" made after September 30, 2011. Thus, even motions made under the prior statute would be subject to the four-year requirement if the judicial release decision was made after September 30, 2011. *Strunk*, 2012-Ohio-5013 at ¶ 12, 14.

{¶ 25} The enactment of H.B. 86 was no secret. It represented a major revision of Ohio's criminal statutes and received a great deal of attention. It was originally introduced in

the House of Representatives on February 3, 2011, passed the General Assembly on June 23, 2011, and was signed by the Ohio Governor on June 29, 2011, before becoming effective on September 30, 2011. Its pendency was such that Rupp or the trial court could have acted in anticipation of it to avoid its application.

{¶ 26} I believe the majority has established a troublesome precedent by effectively holding that Rupp's eligibility somehow became a vested right when the trial court issued its decision on Rupp's first motion for judicial release. Notwithstanding their characterization of this case as being unique and narrow, the majority holds that a movant, eligible to seek relief under a statute and who is denied relief, acquires a vested right to seek relief under an amendment to the statute without regard to the amended eligibility criteria. However, it is not the determination by a trial court of a movant's eligibility to seek judicial release that controls for purposes of R.C. 2929.20(M). Rather, it is a trial court's decision regarding whether judicial release is merited that controls. In the case at bar, the latter did not occur until September 25, 2012, after H.B. 86 became effective.

{¶ 27} The majority cites R.C. 2929.20(D) for the proposition that Rupp remained eligible to seek judicial release after the initial determination of his eligibility because his first motion for judicial release was not dismissed with prejudice or after a hearing. Such an interpretation ignores basic precepts of statutory construction which require that statutory provisions be interpreted in a manner to "harmonize and give full application to all provisions 'unless they are irreconcilable and in hopeless conflict.'" *Hughes v. Ohio Bur. of Motor Vehicles*, 79 Ohio St. 3d 305, 308 (1997), quoting *Couts v. Rose*, 152 Ohio St. 458, 461 (1950). Adopting the majority's interpretation of R.C. 2929.20(D) would render R.C. 2929.20(M) inert. A more harmonious interpretation of R.C. 2929.20(D) is that a dismissal of a motion for judicial release, unless it is with prejudice or after a hearing, is not res judicata, and in the case at bar, that a subsequent motion for judicial release may be filed four years

- 10 -

after Rupp's delivery to prison. In this manner, R.C. 2929.20(D) and R.C. 2929.20(M) are both given effect.

{¶ 28} I take no issue with the majority's determination that the trial court established Rupp's eligibility to seek judicial release. I appreciate what the trial judge wanted to accomplish and what his intent may have been with regard to Rupp's judicial release when Rupp was originally sentenced and his initial motion for judicial release was denied. Significantly, Rupp's sentence was the result of a jury verdict and not a plea negotiation in which promises were made and relied upon by Rupp. However, Rupp's eligibility did not survive the denial of his first motion combined with the amendment of the statute.

{¶ 29} It is not my intention to cede judicial authority to the General Assembly as suggested by the majority. It is my intention to observe the parameters of that authority.

{¶ 30} Our decision in *Strunk*, 2012-Ohio-5013, is controlling here.

{¶ 31} With regard and due respect for my colleagues, I dissent.

- 11 -